UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
| ) | NOS.  CR-05-0035-LRS |
| Respondent,  ) | CV-05-0385-LRS |
| ) | |
| -vs-  ) | |
| ) | ORDER DENYING 28 U.S.C. §2255 |
| MUHAMMED ZBEIDA TILLISY,  ) | MOTION |
| ) | |
| Movant.  ) | |

Before the Court is Movant's 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed December 5, 2005 (Ct. Rec. 85, CR-05-0035, Ct. Rec. 1, CV-05-0385).  The Motion is submitted by Muhammed Zbeida Tillisy, who is appearing *pro se* for the purposes of these proceedings.

## I. BACKGROUND

Mr. Tillisy was indicted on January 12, 2005 for Attempted Credit Card Fraud in violation of 18 U.S.C.§1029(a)(5) and (b)(1); Credit Card Fraud, in violation of 18 U.S.C.§1029(a)(5) and 18 U.S.C.§1029(a)(2); and Conspiracy to Commit Credit Card Fraud, in violation of 18 U.S.C.§1029(b)(2).  Defendant pled guilty to Count Six of the Indictment on May 13, 2005 with a written plea agreement.  On August 31, 2005, Mr. Tillisy was sentenced to a fifty-one month term of imprisonment with three years supervised release; a special assessment of $100; and restitution in the amount $22,916.93.  Mr. Tillisy filed a direct appeal

ORDER - 1

of his sentence on September 8, 2005 pursuant to Fed. R. App. P. 4(b)(1).

Mr. Tillisy contends that his sentence is unconstitutional based on two grounds: 1) conviction obtained by plea of guilty which was unlawfully induced and without the understanding of the nature of the charge and the consequences of the plea; and 2)ineffective assistance of counsel. Ct. Rec. 85, at 5.

## II. DISCUSSION

28 U.S.C. § 2255 provides, in part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A petitioner is entitled to an evidentiary hearing on the motion to vacate his sentence under 28 U.S.C. § 2255, unless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief. This inquiry necessitates a twofold analysis: (1) whether the petitioner's allegations specifically delineate the factual basis of his claim; and, (2) even where the allegations are specific, whether the records, files and affidavits are conclusive against the petitioner. *United States v. Taylor*, 648 F.2d 565, 573 (9th Cir.), cert. denied, 454 U.S. 866 (1981) (internal quotations, citations and footnote omitted).

The statute provides that only if the motion, file, and records "conclusively show that the movant is entitled to no relief" may the

Court summarily dismiss the Motion without sending it to the United States Attorney for response. 28 U.S.C. § 2255. The Rules regarding section 2255 proceedings similarly state that the Court may summarily order dismissal of a § 2255 motion without service upon the United States Attorney only "if it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court." Rule 4(a), RULES-SECTION 2255 PROCEEDINGS. Thus, when a movant fails to state a claim upon which relief can be granted or when the motion is incredible or patently frivolous, the district court may summarily dismiss the motion. *Cf. United States v. Burrows*, 872 F.2d 915, 917 (9th Cir. 1989); *Marrow v. United States,* 772 F.2d 525, 526 (9th Cir. 1985).

**A.   GROUND ONE–UNLAWFULLY INDUCED PLEA**

Mr. Tillisy states that his conviction was obtained by plea of guilty which was unlawfully induced and without the understanding of the nature of the charge and the consequences of the plea.

In support of ground one, Mr. Tillisy states:

> I had undergone numerous operations within the time of my plea. I was under heavy narcotics for these surgeries. I was and am unable to read print whatsoever, and at the time of negioating [sic] my plea was unable to read the material. My case was in the Eastern District while treatment was in Seattle @ harborview medical Center.

Ct. Rec. 85, at 5.

The Court has reviewed, in its entirety, the transcript from the change of plea hearing on May 18, 2005 before the Honorable William Fremming Nielsen. Ct. Rec. 82. The Court provided every opportunity for Mr. Tillisy to understand everything in the plea agreement and the

ORDER - 3

consequences of the plea.  It is also evident that Mr. Tillisy was not unable to understand the plea due to being "under heavy narcotics," as he alleges.  The Court now sets forth excerpts from the transcript to dispose of Mr. Tillisy's ground one claim.

THE COURT: All right.  Now, this is an important hearing, I want to make sure you understand everything that is said.  If you don't understand something, you stop us and we will go back and make sure you do, will you do that?
DEFENDANT: Yes.

THE COURT: Have you taken any prescription drugs or any substance that you feel may have affected your mental alertness today?
DEFENDANT: No.

THE COURT: Do you feel you understand what is being said?
DEFENDANT: Yes.

THE COURT: You are with your lawyer, Gerald Smith, is that right?
DEFENDANT: Yes.

THE COURT: Have you had enough time to visit with Mr. Smith about this case?
DEFENDANT: Yes.

THE COURT: You hesitate?
DEFENDANT: Well, I have just had a lot of surgeries and stuff and I have been coming back and forth, so.

THE COURT: When did you have some surgeries?
DEFENDANT: A few months ago.

THE COURT: Do you feel okay today?
DEFENDANT: Yeah, I am all right.

THE COURT: Now you are charged with having committed a crime, a federal crime, which is outlined in Count 6 of the Indictment.  First of all, let me ask you this, have you had a chance to read the Indictment?
DEFENDANT: Yes.

THE COURT: Did you read Count 6 which charges you with being a member of a conspiracy to commit credit card fraud?
DEFENDANT: Yes, I have read that.

THE COURT: Are you aware that that is a federal crime?
DEFENDANT: Yes, I am.

ORDER - 4

1  THE COURT:    If you are found guilty of Count 6, there are maximum
                 penalties the court could impose.  That could be jail time,
2                up to seven and a half years; a fine of $250,000, up to 250,
                 and that could be both jail and fine; supervised release of
3                not more than three years, plus a one hundred dollar special
                 assessment.  Do you understand those are the maximum
4                penalties?
   DEFENDANT:    Yes.
5
   THE COURT:    Now, you have apparently entered into a plea agreement; is
6                that correct?
   DEFENDANT:    Yes.
7
   THE COURT:    Did you sign that agreement yourself?
8  DEFENDANT:    Yes, I did.

9  THE COURT:    Now, the copy that I have shows the signature of May 13th,
                 that is last Friday, is that when you signed it?
10 DEFENDANT:    Yes, I did.

11 THE COURT:    Before you signed it, did you have a chance to read it over
                 carefully?
12 DEFENDANT:    Yes, I did.

13 THE COURT:    Did you have a chance to discuss it with Mr. Smith?
   DEFENDANT:    Yes, I did.
14
   THE COURT:    Was he able to answer any questions that you had about that
15               plea agreement?
   DEFENDANT:    Yes, he was.
16
   THE COURT:    Are you -- do you feel you are familiar with the terms and
17               understand the meaning of those terms to you?
   DEFENDANT:    Yes.
18
   THE COURT:    Now, that is a contract, Mr. Tillisy, between yourself and
19               the government. I am not a party to it, Judge Suko is not a
                 party to it, the courts aren't bound by it because the
20               courts aren't parties to it and that means that when it
                 comes time to sentence, Judge Suko could impose a sentence
21               that is tougher than what you hoped for when you signed this
                 agreement and that would not give you the right to withdraw
22               from the plea agreement, do you understand that?
   DEFENDANT:    Yes.
23
   THE COURT:    All right. Now, do you have a copy of the plea agreement
24               there?
   MR. SMITH:    Yes, Your Honor.
25
   THE COURT:    I would ask you to take a look at page 4, paragraph 5,
26               starts at the top of the page. Do you see where referring --

ORDER - 5

| | | |
|---|---|---|
| 1 | | that paragraph 5, the heading is, "Factual basis of statement of facts." Mr. Tillisy, did you read that over carefully, all those facts? |
| 2 | DEFENDANT: | It was read to me by my attorney. |
| 3 | THE COURT: | Did you understand what those facts -- did you understand the recitation of those facts? |
| 4 | DEFENDANT: | Yes. |
| 5 | THE COURT: | Now, you say in that -- or this plea agreement says in the first sentence that you and the United States stipulate that these facts are accurate, and that the United States could prove these facts beyond a reasonable doubt at trial. Do you agree with that statement? |
| 6 | | |
| 7 | | |
| 8 | DEFENDANT: | Yes. |
| 9 | THE COURT: | Now, over on page 5, there is a subparagraph that starts at line 4, that reads, "During the months of November and December, 2003," do you see where I am reading? |
| 10 | | |
| | DEFENDANT: | Yeah. |
| 11 | | |
| | THE COURT: | Do you see that paragraph, Mr. Tillisy? |
| 12 | DEFENDANT: | Yes, I believe so. |
| 13 | THE COURT: | What? |
| | DEFENDANT: | I believe so. |
| 14 | | |
| | THE COURT: | Well, I want you to make sure you see on page 5, on line 4, because I am going to read it to you and I want you to follow along if you would please, "During the -- |
| 15 | | |
| 16 | MR. SMITH: | Your Honor, if I may, part of the problem, Mr. Tillisy does suffer from some vision loss because of his medical condition. |
| 17 | | |
| 18 | THE COURT: | Well, I am going to read it to you then slowly and you can listen. |
| 19 | DEFENDANT: | All right, thank you. |
| 20 | THE COURT: | Mr. Smith will follow along and he will tell me if I am not reading it accurately. |
| 21 | DEFENDANT: | All right. |
| 22 | THE COURT: | All right. It says -- this paragraph on line 4 says, "During the months of November and December, 2003, the defendants used the prepaid Master Card account number X X X X X X 7058, to incur over 146 thousand dollars in unauthorized charges." Is that an accurate statement, Mr. Tillisy? |
| 23 | | |
| 24 | | |
| | DEFENDANT: | Yes, your Honor. |
| 25 | | |
| 26 | | |

ORDER - 6

Judge Nielsen found that Mr. Tillisy understood the charges, the penalties, the plea agreement and his right to a jury trial. Judge Nielsen determined Mr. Tillisy was competent and entered his plea knowingly and voluntarily:

> THE COURT: Okay. Well, I find, Mr. Tillisy, that you are a competent person, understand the charge brought against you, understand the consequences of a finding of guilt. You pled guilty, you did so knowingly and voluntarily.

Ct. Rec. 82.

The Court finds that the Movant has failed to show a constitutional violation under ground one.

**B.  GROUND TWO–INEFFECTIVE ASSISTANCE OF COUNSEL**

Mr. Tillisy alleges that his attorney Mr. Smith tricked him into taking the plea of guilty. In support of ground two, Mr. Tillisy states:

> While undergoing surgeries attornet [sic] failed to assist me reading and understanding negotiations of plea. Attorney stated that if I did not plea that on that following Monday, I would be going to trial along with my sister and that she would defenitly [sic] get a long time in jail. Negotiations were done with my father who was able to get sister/co-defendant case dismissed through the FBI. Therefore attorney tricked into taking the plea. All this time I could not read any print on the negotiated plea agreement.

Ct. Rec. 85, at 5.

The Court has reviewed, in totality, the transcript from the change of plea hearing on May 18, 2005 before the Honorable William Fremming Nielsen (Ct. Rec. 82) as well as the transcript from the sentencing hearing on August 31, 2005 (Ct. Rec. 83), before the undersigned.

The Court rejects Mr. Tillisy's argument, and concludes that defense counsel's performance was not deficient. At the sentencing hearing, defense counsel raised to the Court the "supporting facts" Mr. Tillisy sets forth in support of his allegation that his "attorney tricked [him]

ORDER - 7

into taking the plea." Ct. Rec. 85, at 5. In this regard, the Court sets forth the following colloquy, in pertinent part, from the sentencing hearing:

MR. SMITH: . . . There were other things that were going on, there was discussion about reducing things, that his father would talk to the government about other matters, that was more in relation with Mr. Tillisy's sister than with him, but all of these things were going on.
Ct. Rec. 83, at 9.

MR. SMITH: A part of the plea agreement when Mr. Tillisy pled guilty was finally the dismissal of the charges against his sister, and the government indicated that if he did not plead and did go to trial, that she would be in trial beside him. That is the reverse of substantial assistance that we normally think of, but I think it is something that is somewhat parallel and Mr., Tillisy deserved consideration of that. Could I have a minute, Your Honor?

THE COURT: Certainly.
(Conversation between Mr. Smith and defendant took place at this time off the record)

THE COURT: Mr. Tillisy, as I had indicated earlier, you have the right to speak directly to the sentencing Judge as to matters I should take into account in setting sentence.
Ct. Rec. 83, at 20.

In addressing the issue of ineffective assistance of counsel, the Court is guided by the now-familiar construct *of Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As required by that analytical framework:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687.

ORDER - 8

In *Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir.1997), discussing the first prong of the Strickland analysis, the Sixth Circuit recognized:

> The [Supreme] Court cautioned that in undertaking an ineffective-assistance review, "[j]udicial scrutiny of counsel's performance must be highly deferential," and must avoid the "second-guess[ing of] counsel's assistance …, [as] it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689…. In order to avoid "the distorting effects of hindsight," a reviewing "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that … the challenged action 'might be considered sound trial strategy.' " *Id* . (citation omitted).

Furthermore, in evaluating the prejudice suffered by a petitioner as a result of alleged ineffective assistance of counsel, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Indeed, "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id. (citation omitted). Rather, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Finally, in conducting this inquiry, we need not apply *Strickland*'s principles in a mechanical fashion. As the Supreme Court explained:

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

Id. at 697.

The Court begins its review by either determining whether counsel's performance was deficient, or by determining any possible prejudice suffered by Mr. Tillisy. In either event, the result in this case is identical.

According to Mr. Tillisy, defense counsel explained the plea agreement and he was satisfied with his assistance. Further, at the change of plea hearing, Mr. Tillisy indicated that Mr. Smith had read the plea agreement to him, which undermines his claim that he could not read the print and that his attorney failed to assist him in reading and understanding negotiations of plea.

The record contains no evidence that Mr. Tillisy's attorney breached his ethical duty or other duties in representing the Movant. The Court finds that rather than alleged trickery, defense counsel advised the Court of Mr. Tillisy's concerns with regard to the plea negotiations during the sentencing hearing. Mr. Tillisy also had every opportunity to speak directly to the Court as to matters that he wanted taken into account in setting his sentence.

In fact, it appears that Mr. Tillisy was satisfied with the services from Mr. Smith. At the change of plea hearing, the following colloquy occurred:

```
THE COURT:   And I will ask you again, Mr. Smith being your lawyer, have
             you had enough time to visit with him about this case, even
             though you have had apparently some medical work done?
DEFENDANT:   Yes.

THE COURT:   Are you satisfied with the advice that he has given to you?
DEFENDANT:   Yes.
```

Similarly, given Mr. Tillisy's criminal history, and admissions after his arrest and at the change of plea hearing, there is no indication that Mr. Tillisy was prejudiced, i.e., that he would have received a lesser sentence of 51 months, the sentence he received, and which was at the low end of the advisory sentencing guideline range of 51-63 months. The Court finds that the Movant has not provided any evidence to convince this Court that his constitutional rights were violated under ground two.

The Movant is not entitled to an evidentiary hearing on the motion to vacate his sentence under 28 U.S.C. § 2255. Additionally, the Court summarily dismisses the Motion without sending it to the United States Attorney for response. Accordingly,

**IT IS ORDERED** that:

1. Mr. Tillisy's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed December 5, 2005 (Ct. Rec. 85, CR-05-0035; Ct. Rec. 1, CV-05-0385) is **DENIED**.

2. The District Court Executive is directed to:

   (a) File this Order;

   (b) Provide a copy to Movant **AND TO** the United States Attorney, Spokane, Washington; and

   (c) **CLOSE THESE FILES**.

1    **DATED** this 16th day of December, 2005.

3                                              *S/ Lonny R. Suko*
                                                LONNY R. SUKO
4                                         UNITED STATES DISTRICT JUDGE

ORDER - 12